IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARTHUR SPIRES,<br>   Plaintiff<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>   Defendant | Civil Action No. 07-224 Erie<br><br>District Judge McLaughlin<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

It is recommended that Plaintiff's Motion for Summary Judgment be denied. It is further recommended that the Motion for Summary Judgment filed by Defendant be granted and the decision of the Commissioner denying Plaintiff's application for Social Security Disability Insurance Benefits be affirmed.

**II REPORT**

 **A. Procedural Background**

Plaintiff Arthur Spires ("Spires") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security denying his Application for Disability Insurance Benefits ("DIB") under title II of the Social Security Act ("the Act"), which he filed on December 6, 2004. Spires alleges disability beginning October 31, 2000, with a date last insured ("DLI") of December 31, 2005. (R. 11). His application was denied, and he requested a hearing. (R. 11). A hearing was conducted on January 29, 2007, before Administrative Law Judge Janice C. Volkman ("the ALJ"), at which Spires was represented by legal counsel. (Id.). A vocational expert, Beth Kelley, testified at this hearing. The ALJ issued a decision on February 16, 2007, finding that Spires was not disabled during the relevant time period and denying his claim for disability benefits. (R.11-20). Spires filed a request for review of the ALJ's decision with the Social Security Administration's Appeals

Council, which subsequently denied his request on June 29, 2007. (R. 3).

Spires has filed this appeal seeking judicial review pursuant to 42 U.S.C. §§ 405(g). He alleges errors entitling him to an award of benefits, or in the alternative, a new administrative hearing. The Commissioner disagrees. Both Spires and the Commissioner have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The matter is therefore ripe for review and disposition.

## B. Factual Background

Spires was born on September 6, 1964. (R. 51).[1] At the time of his most recent ALJ hearing, Spires was 42 years of age. (R. 19). He has a limited education and past vocational experience as a maintenance mechanic, an electrician apprentice and a pizza delivery person. (R. 18-19). Spires alleges that his ability to work has been limited by his status post cervical fusion at C5-6, rotator cuff repair, and depression. (R. 11).

## C. Medical Background

On July 17, 2000, Spires suffered a work-related injury, which resulted in neck, left shoulder, and left arm pain, along will occasional numbness in his left hand. (R. 128). In January 2001, he was diagnosed with C6 left-sided radiculopathy and C5-6 herniation, confirmed by EMG in May 2001. (R. 121-26, 128-30). On February 13, 2001, Spires underwent arthroscopic surgery on his left shoulder. (R. 176-77). He also had a cervical fusion of C5-6, but continued to complain of residual pain and numbness. (R. 96-110).

Joseph Thomas, M.D., treated Spires for his cervical pain and determined, through physical examinations, that Spires showed fair range of motion in the cervical spine, with reduction in left lateral rotation. (R. 149-174). Spires received medications and injections as

---

[1] The Court's recitation of relevant facts is derived from the transcript of the administrative record filed by the Commissioner as part of his answer in accordance with § 205(g)of the Act, 42 U.S.C. § 405(g), which is referred to hereinafter as "R."

2

treatment. (Id.). In February 2003, Spires was involved in a motor vehicle accident and thereafter reported some increased symptoms. (R. 149-58). Throughout his treatment of Spires, Dr. Thomas frequently mentioned in his evaluations that Spires was capable of performing sedentary to medium exertional level work. (R. 158-59, 161-63, 170).

On June 20, 2003, Dr. Thomas completed an Evaluation of Physical Capabilities Form, indicating that Spires could perform light work, on either a part-time or full-time basis, and was capable of: lifting and carrying objects up to thirty pounds; standing and/or walking six to eight hours in an eight-hour workday; sitting without restriction; using his hands and feet without limitation; and frequently bending, squatting, climbing, kneeling, twisting, and reaching. (R. 220).

Jeffrey Start, M.D., was Spires' primary care physician, who treated Spires for his recurring symptoms, as well as new complaints of elbow and forearm pain. (R. 194-206). Dr. Start's treatment of Spires consisted primarily of the conservative use of medication. (Id.).

On referral from Dr. Start, Spires was seen by Jonathan A. Borden, M.D., for an evaluation of his arm and neck pain on September 27, 2004. (R. 207-10). Dr. Borden opined that Spires' motor vehicle accident had aggravated his chronic neck pain, but he gave no recommendation for Spires' ailment, other than to continue using non-surgical approaches for pain relief. (R. 209). Dr. Borden also recommended that Spires be seen by an orthopedist/hand specialist for epicondylitis and carpal tunnel syndrome, and that he revisit his orthopedic surgeon to reevaluate his shoulder. (Id.).

On March 3, 2005, Spires was examined by Bharathi S. Voora, M.D., a state agency physician. (R. 228-32). Dr. Voora noted that Spires drove himself to the office, and that he seemed to be comfortable during the interview and examination. (R. 231). On examination, Dr. Voora observed that Spires moved comfortably on and off the examination table, and could walk on his heels and toes, squat and rise from the squatting position, and rise from a chair. (Id.). Dr. Voora noted that Spires had no trouble sitting, standing, bending, or walking, and required no assistive device. (Id.).

Dr. Voora's neurological examination revealed that Spires' cranial nerves were intact

3

and that his motor function was 5/5 in his right upper extremity and both lower extremities, and 4 ½/5 in the left upper extremity due to pain. (Id.). Spires' reflexes were 2+ in both elbows, wrists, knees, and ankles. (Id.). Spires claimed that he had decreased sensation in the left upper extremity when compared to the right, but there was no distribution pattern. (Id.). Straight leg raising was negative in the supine and sitting position. (Id.). Bilateral, femoral, posterior tibial, and dorsalis pedis were 4/4, and his gait was normal. (R. 231-32).

According to Dr. Voora's assessment, Spires had depression and some residual pain after his cervical fusion, vehicle accident, and shoulder surgery. (R. 232). Dr. Voora opined that Spires could lift no more than twenty pounds above his head and would not be able to return to his past job, but could be retrained. (Id.).

After his examination of Spires, Dr. Voora completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities form, in which he concluded that Spires had the residual functional capacity ("RFC") to perform a range of light work, finding that Spires could lift and carry twenty pounds frequently; stand and/or walk for four hours in an eight hour workday; sit without limitation; perform unlimited pushing and pulling; occasionally bend, kneel, stoop, crouch, balance and climb; perform unlimited manipulative, visual, and communicative functions; and withstand environmental elements without limitation, except for some noted restrictions on working with moving machinery. (R. 233).

On March 22, 2005, Spires underwent a mental status examination by Glenn Bailey, Ph.D., and reported no current psychiatric hospitalizations or mental health counseling, other than the medication prescribed by Dr. Start. (R. 235-41). Spires reported doing household activities such as shopping, cooking, cleaning and caring for himself. (R. 240). Spires also was able to interact socially without difficulty. (Id.). Dr. Bailey noted few signs of depression during the interview, and added that Spires laughed and joked during the examination. (R. 238). Dr. Bailey's impressions were major depression, recurrent, and chronic pain syndrome. (R. 240). Dr. Bailey also performed a mental residual functional capacity assessment, indicating that Spires had moderate limitations in understanding, remembering, and carrying out detailed instructions, and in making judgments on simple, work-related tasks. (R. 242-244). Dr. Bailey

added that Spires' "ability to remember fluctuate[d] depending upon his pain levels." (R. 242). Dr. Bailey also found that Spires could interact appropriately with the public, supervisors and co-workers, and could respond appropriately to work-related pressures and changes in a routine work setting. (Id.).

On April 15, 2005, Jay Newberg, M.D., a state agency physician, concluded that Spires had the RFC to perform light work. (R. 245-52). According to Dr. Newberg, Spires could lift and carry up to twenty pounds occasionally and ten pounds frequently; stand, walk and/or sit up to six hours in an eight-hour workday, perform unlimited pushing and pulling; occasionally climb, balance, stoop, kneel, crouch, and crawl; perform unlimited manipulative, visual and communicative functions; and withstand all environmental elements. (R. 246-48).

On May 6, 2005, Larry Smith, PhD, a state agency psychologist, completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment, noting that Spires exhibited a major depressive disorder and psychological factors affecting physical pain, which resulted in mild to moderate functional limitations. (R. 253-69). In particular, Dr. Smith concluded that Spires had moderate limitations in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities with a schedule, maintain regular attendance, and be punctual; complete a normal workday and workweek without interruption and perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in work setting. (R. 267-68). Overall, Dr. Smith found that Spires' limitations were not so severe as to preclude performance of routine work tasks, and that Spires was able to meet the basic mental demands of competitive work on a sustained basis, despite his limitations. (R. 269).

On November 4, 2006, nearly one year after Spires' DLI, Dr. Thomas wrote a letter to Spires' legal counsel stating that, due to intermittent cervical root symptoms, Spires had "poor predictability regarding his ability to work." (R. 271-72). In particular, Dr. Thomas opined that Spires could not perform a predictable level of employment unless he could be retrained and be self-employed, likely in a home setting. (R. 272 ). Dr. Thomas opined further that Spires had permanent disability in twenty percent of his body based on his cervical disease and its effect on

5

his upper extremity, neck motion, and use of his left upper extremity. (Id.).

### D. Disability Hearing

At the administrative hearing held on January 29, 2007, Spires testified that he was living with his girlfriend and had an eighth grade education. (R. 280). The last job he worked was in 2000, as a machine maintenance person in a plastics shop, where he had worked for six or seven years. (R. 280-81). Spires stated that his job required him to lift hydraulic cylinders weighing from 32 to over 100 pounds. (R. 281). He testified that his work accident occurred when a three foot long pipe wrench he was using slipped, causing him to jar his left shoulder, which ultimately required arthroscopic surgery. (R. 281). He later had a fusion of his cervical spine at C5-6. (R. 282). As a result of his work accident, Spires received workers' compensation until early 2002, at which time he settled his case for approximately $ 70,000. (R. 283).

Spires testified that he continued to have problems with his shoulder and neck, such that, when he tried to bend his neck to the left, he got pain down his arm and experienced numbness in three fingers on his left hand. (R.284). Spires stated that he owned a car, but drove it infrequently, noting that it was a 2003 model with only 17,000 miles on it. (Id.). Spires indicated that he took a number of medications that were prescribed by Dr. Thomas, including Prozac, Hydrocodone, Prometherin, and Soma. (R. 285-86). He is not undergoing any kind of physical therapy. (R. 286). Spires testified that he was capable of walking about a mile, and could stand for four hours, sit for six hours, and lift thirty pounds. (R. 287). With regard to daily activities, Spires testified that he usually watched television for about an hour, let the dogs out, and did light housework, such as dishwashing and vacuuming. (Id.). He also did occasional shopping, and could get dressed, shave, and shower on his own. (R. 288, 293).

After Spires' testimony, the ALJ called upon the vocational expert ("VE") to consider a hypothetical individual having the same age, education, and work experience as Spires with the RFC to perform light work not requiring lateral neck movement or frequent pushing and pulling with the non-dominant arm. (R. 296). The ALJ then asked the VE if there were jobs existing in

the national economy that the hypothetical individual could perform. (R. 297). In response, the VE testified that such jobs did exist, including jobs as a packer, assembler, and mail clerk. (Id.). The VE also testified that such an individual would be able to perform work at the sedentary exertional level as a packer, assembler, cashier, or ticket seller. (Id.).

### E. The Administrative Law Judge's Decision

The ALJ made the following findings which are listed verbatim from her decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since October 3, 2000, the alleged onset date (20 CFR 404.1520(b), and 404.1571, *et seq*.).

3. The claimant has the following severe impairments: status post cervical fusion at C5-6, and status post rotator cuff repair (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform a range of light exertional activities in that the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and walk up to 6 hours in an 8-hour day; and sit up to 6 hours in an 8-hour day. Additionally, the claimant's work must not require frequent movement of the neck or frequent pushing and pulling with the non dominant arm.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 6, 1964 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2000 through the date of this decision (20 CFR

7

404.1520(g)).

The ALJ then determined that, based on the application and record before her, Spires was not eligible for disability insurance benefits.

## III. STANDARDS OF REVIEW

### A. Jurisdiction

District Court review of an ALJ's decision regarding disability benefits is limited in scope. 42 U.S.C. §§ 405(g) provides "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain review of such decision by a civil action." A decision of the Commissioner becomes final when the Appeals Council affirms an ALJ decision, denies review of an ALJ decision, or when a claimant fails to pursue the available administrative remedies. Aversa v. Secretary of Health & Human Services, 672 F.Supp. 775, 777 (D.N.J.1987); see also 20 C.F.R. §§ 404.905. This court has jurisdiction to review the case under §§ 405(g) because the Commissioner's decision became final upon the Appeals Council's denial of review of the ALJ's decision.

### B. Standards applicable to the ALJ's decision

The Social Security Act provides limited judicial review of a final decision of the Commissioner. In reviewing the Commissioner's decision, this Court may not decide facts anew, reweigh the evidence, or substitute this court's judgment for that of the Commissioner or, by extension, the ALJ. See Herron v. Shalala, 913 F.3d 329, 333 (7th Cir. 1994). Rather, this Court must affirm a decision if it is supported by substantial evidence and the ALJ has made no error of law. 42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Pierce v. Underwood, 487 U.S. 552, 564-65 (1988) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)). See also Jesurum v. Sec'y of U.S. Dep't of Health and Human Servs., 48 F.3d, 114, 117 (3d Cir. 1995); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Spires contends that the ALJ's decision is not supported by

substantial evidence.

A disability is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (Supp. 2002); 20 C.F.R. § 404.1505(a) (2002). A claimant is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner must perform a five-step sequential evaluation process to make disability determinations under the regulations. See 20 C.F.R. § 416.920. If the claimant fails to meet the requirements at any step in the process, the Commissioner may conclude that the claimant is not disabled under the Act. The ALJ must determine, in order: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. See 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

In this case, the ALJ evaluated the case under these guidelines and determined, at step five, that Spires could perform certain light work available in the national economy. (R. 19). Specifically, the ALJ concluded that: (1) Spires was not currently employed in substantial gainful activity; (2) that he had impairments that were severe; (3) that these impairments did not meet the criteria for listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (1999), and that Spires retained the capacity to perform a significant range of light work; (4) that Spires had a history of past relevant work; and (5) that his impairments did not prevent him from performing such jobs as a packer of miscellaneous products, small products assembler, and

mail clerk. (R. 19).

Spires has the burden of establishing that he is disabled under the Act. See 20 C.F.R. §§ 404.1512, 416.912. The ALJ should consider the claimant's ability to meet certain mental and physical demands of jobs when assessing his residual functional capacity. 20 C.F.R. §§ 404.1545(a), 416.945(a). Spires has specified three primary errors that he claims were made by the ALJ in reaching her decision that Spires could perform a significant range of light work, which, in sum, challenge the ALJ's decision as being unsupported by substantial evidence of record. (See Plaintiff's Brief at pp. 7-18). In particular, Spires asserts that the ALJ erred in: (i) rejecting evidence that Spires' depression was a "severe impairment" within the meaning of the Act; (ii) failing to include all of Spires' work-related limitations in the hypothetical she posed to the VE; and (iii) failing to consider Spires' work history as part of the credibility determination. Each of these arguments will be considered, in turn, below.

## IV.     DISCUSSION

### A.     ALJ's Determination that Spires' Depression Was Not Severe

Spires first argues that the ALJ erred as a matter of law in determining under step two of the sequential analysis that his depression did not constitute a severe impairment under applicable Social Security Regulations. Specifically, the ALJ concluded that Spires' depression was "not severe" because, "[m]edical and other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (R. 14). Spires argues that this determination was "clearly contrary to the evidence of record," primarily citing the evidence of Spires' "moderate limitations" found by Social Security's consultative examiner and reviewing physician. (Plaintiff's Brief at pp. 11-12). In addition, Spires argues that the ALJ erred in not considering the aggregate effect of these "moderate impairments." (Id.). This Court disagrees.

The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two determination of severity in terms of what is "not severe." According to the Commissioner's regulations, "an impairment or combination of impairments is not severe if it

does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are defined as "abilities and aptitudes necessary to do most jobs," including, inter alia, "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" and "capacities for seeing, hearing, and speaking." 20 C.F.R. § 140.1521(b)(1) and (2).

The step two inquiry is intended to be a *de minimis* screening device to dispose of groundless claims. Newell v. Comm'r of Social Security, 347 F.3d 541 (3d Cir. 2003). As such, the cases and Rulings[2] interpreting the step two determination apply a more lenient standard than may be apparent from a strict interpretation of the language of the above regulation. In particular, Social Security Ruling ("SSR") 85-28 provides than an impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 SSR LEXIS 19, at *6-7. "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." Newell, 347 F.3d at 546, citing Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). "Reasonable doubts on severity are to be resolved in favor of the claimant." Newell, 347 F.3d at 547.[3]

In this case, the ALJ did not err in her application of the step-two severity determination in finding that Spires' depression was "not severe." The ALJ considered all relevant medical records in determining that Spires' depression had no more than a minimal effect on his ability to work, noting that Spires received no psychiatric hospitalization or mental health counseling

---

[2] A Social Security Ruling is the Social Security Administration's ("SSA") interpretation of the statute it administers and its own regulations. Although they do not have the force of law, once published, Rulings are binding on all components of the SSA. Walton v. Halter, 243 F.3d 703, 708 (3d Cir. 2001).

[3] SSR 85-28 instructs that "[g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." SSA 85-28, 1985 SSR LEXIS 19, at *11-12.

11

other than Dr. Start's prescriptions for Prozac and Vicodin. (R. 17). In particular, the ALJ found that Spires was capable of doing basic chores, caring for himself, walking a mile everyday, sitting and standing for up to six hours, and lifting thirty pounds. (R. 16; 20 C.F.R. § 404.1521(a)). The ALJ also relied on examinations performed by Dr. Voora and Dr. Bailey, which determined that Spires could still perform "a light range of exertional activities," despite the few combined moderate limitations caused by his depression. (R. 17). Furthermore, the consulting psychologist's report, cited by Spires as evidence of "severe" depression, concludes that Spires "[i]s able to meet the basic mental demands of competitive work on a sustained basis...," even though his depression moderately limits him in a few work-related activities. (R. 269). Relying on the evidence of record, the ALJ considered the aggregate effect of Spires' moderate limitations, but concluded that they did not constitute more than a minimal effect on Spires' ability to do basic work. SSR 85-28, 1985 SSR LEXIS 19, at *6-7. Therefore, the ALJ based her judgment on substantial medical evidence and appropriately determined that Spires' depression was "not severe."

### B. ALJ's Alleged Failure to Include All of Spires' Work-Related Limitations in the Hypothetical She Posed to the VE

Spires alleges that "[i]n absence of a hypothetical assumption that can be fairly said to describe with specificity plaintiff's work-related limitations, the decision to deny benefits must, as a matter of law, be found deficient." (Plaintiff's Brief at p. 16). In the hypothetical, the ALJ asked the VE to assume an individual with Spires' age, eighth grade education, and past work experience, who could do light work provided he did not have to frequently move his neck or push or pull with his non-dominant hand. (R. 296). Spires' argument is based upon the ALJ's alleged failure to include all of Spires' limitations in the hypothetical, "[s]pecifically his inability to attend work on a regular basis and his need for frequent breaks due to the unpredictable nature of his cervical pain as opined by Dr. Thomas," and his "severe" mental limitations. (Plaintiff's Brief at p. 16). This Court is unimpressed.

In her decision, the ALJ found that the totality of the evidence did not support a finding

that Spires' depression was a severe impairment. (R. 18). On the contrary, the ALJ determined that Spires had no functional limitations due to his depression, noting that substantial medical evidence suggested that Spires' depression did not significantly restrict his ability to work. (Id.). Finding that Spires had no limitations due to a mental impairment, the ALJ was not required to include such limitations in her hypothetical.

Furthermore, the November 2006 letter from Dr. Thomas assesses Spires' condition nearly a year after his relevant DLI of December 31, 2005, and conflicts with Dr. Thomas' earlier opinions that Spires could engage in some kind of light work. 20 C.F.R. § 404.131. In particular, Dr. Thomas noted in previous reports that Spires had the RFC to engage in sedentary to medium levels of work and could also be retrained. (R. 158-59, 161-63, 170). Additionally, in his Evaluation of Physical Capabilities form dated June 2003, Dr. Thomas opined that Spires was capable of performing both full and part time work, with few moderate limitations. (R. 220). These earlier opinions of Dr. Thomas are consistent with Dr. Voora's assertion that Spires could be retrained, the other RFC assessments of record, and Spires' own testimony regarding his daily activities which, in sum, suggest that Spires was capable of performing light work. (R. 232-34, 245-51, 287-88). Nevertheless, the ALJ did appropriately consider the November 2006 letter from Dr. Thomas in her evaluation, and gave weight to Dr. Thomas' opinion that Spires' had 20% permanent disability, finding this opinion to be consistent with the other substantial evidence of record in showing that Spires was not totally disabled. (R. 18). Thus, the ALJ generally accepted Dr. Thomas' clinical findings, but rejected his conclusion that Spires was incapable of performing work because it was inconsistent with all other medical evidence of record.

The regulations provide that an ALJ may reject a treating physician's opinion where it is: (I) not well supported by medically accepted clinical and laboratory diagnostic techniques, or (ii) inconsistent with other substantial evidence. 20 C.F.R. § 416.927(d)(2). Additionally, an ALJ's hypothetical to the VE must accurately portray the claimant's impairments as they appear from the record. Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Here, contrary to Spires' assertions, the ALJ did not err in limiting her hypothetical to only the physical

13

conditions supported by substantial evidence from the record.

      **C.**     **ALJ's Alleged Failure to Consider Spires' Work History as Part of the Credibility Determination**

Spires asserts that the ALJ should have considered Spires' twenty-year work history as a maintenance mechanic, an electrician apprentice, and a pizza delivery driver as evidence of his credibility regarding his assertions of chronic pain and impairment. (See Plaintiff's Brief at p. 17). In determining the credibility of a claimant's pain and symptoms of impairment, an ALJ follows a two-step process asking (1) whether there is an underlying medically determinable physical or mental impairment and, if so, (2) if the intensity, persistence, and limiting effects of the claimant's symptoms limit the claimant's ability to do basic work activities. (R. 15). In this case, the ALJ found that Spires' "[m]edically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Spires'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 16).

In making her credibility determination, the ALJ contrasted Spires' statement that he could not return to work because he could not do "'day to day things,'" with his admitted daily activities, such as watching television, doing household chores, and shopping. (Id.). Spires also testified that he walked about one mile per day, and that he could stand, depending on his pain level, sit for six hours and lift thirty pounds. (Id.). Spires' testimony of his abilities is consistent with the two RFC assessments given by Dr. Voora and the state agency physician, which state that Spires was capable of performing light work. (R.16, 232-34, 245-53). Thus, the ALJ based her credibility determination on substantial evidence of record, including Spires' testimony, and was not obligated to afford Spires' assertions of pain greater weight because of his past work. (See Defendant's Brief at p. 16). Accordingly, substantial evidence of record exists to support the ALJ's credibility determination that "[t]he extent of [Spires'] reported daily activities is not indicative of total disability." (R. 18).

## V. CONCLUSION

For the foregoing reasons, this Court concludes that the decision of the ALJ is properly supported by substantial evidence. Accordingly, it is recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the decision of the Commissioner denying Plaintiff's application for Social Security Disability Insurance Benefits be affirmed..

In accordance with the Magistrate Judges Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See, e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

        /s/ Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        Chief U.S. Magistrate Judge

Dated: June 27, 2008

cc:    The Honorable Sean J. McLaughlin
       United States District Judge